Filed 5/20/15  P. v. See CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHALA JESUS SEE,<br><br>Defendant and Appellant. | F067577<br><br>(Super. Ct. No. VCF261084A)<br><br>**OPINION** |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Detjen, J. and Smith, J.

# INTRODUCTION

A jury convicted appellant Chala Jesus See of contributing to the delinquency of a minor, a violation of Penal Code section 272, subdivision (a)(1),[1] and being a felon in possession of a firearm, a violation of section 12021, subdivision (a)(1); various enhancements also were found true. See challenges his conviction for contributing to the delinquency of a minor on the grounds of insufficiency of the evidence. He also contends the trial court erred in allowing a witness to invoke the Fifth Amendment and refuse to testify, which See claims deprived him of a defense. We will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Visalia Police Officer Julian Lopez was dispatched to an apartment complex regarding a vandalism complaint. When Lopez arrived at the apartment complex, he saw a Honda with three people inside. Lopez shined his spotlight on the Honda; it immediately pulled away and made an unsafe turn. Lopez activated his patrol vehicle's overhead lights as he followed the Honda. After a three block pursuit, See, the driver of the Honda, pulled over.

In the Honda with See were Aichang See[2] and M.S. The two passengers started to get out of the vehicle, but Lopez ordered them at gunpoint to remain inside the vehicle. At this point, Officer Ger Vang and Detective Daniel Ford arrived on the scene. Ford recognized the location where See had stopped the Honda as See's residence. Aichang and M.S. also lived at the same residence. Ford recognized the location because he had "been inside, around, or near that residence at least 20 times."

Lopez searched the Honda and found a loaded shotgun between the front seats. Shotgun shells were "pushed up under" the passenger seat. A can of blue spray paint was

[1]All further statutory references are to the Penal Code unless otherwise stated.

[2]We will refer to Aichang by his first name, not out of disrespect but to avoid any confusion.

2.

on the floor of the vehicle near the backseat.  See had blue paint on his shirt and pants.  M.S. was wearing latex gloves; there was blue paint on the gloves.

Vang then left Lopez and Ford at the site where the Honda had been stopped and went to the apartment complex to continue the investigation.  He saw freshly painted blue graffiti on a mailbox and on the side of the apartment building.  When Ford arrived at the apartment complex a short time later, he also observed the blue graffiti on the mailbox and building.  The graffiti included words and symbols associated with the Oriental Troop gang.

See was charged with possession of a firearm by a felon (count 1), vandalism with damage less than $400 (count 2), and contributing to the delinquency of a minor (count 3).  Alleged as to all three counts was the section 186.22, subdivision (b) gang enhancement and the allegation that See had suffered a prior strike conviction.  Count 1 also alleged a prior serious felony conviction.

Ford was a member of the Visalia Police Department's gang suppression unit and testified as the prosecution's gang expert.  Ford had been with the police department for approximately seven years and had spent three and one-half years in the gang unit.  His primary responsibility when part of that unit was Asian gangs, including Oriental Troop.  His responsibilities included staying "up to speed" on the gang members.  Many of his contacts with gang members were for the purpose of collecting information on individual gang members and the gang, not as part of an arrest.  Field contact cards were filled out when there was a contact with a gang member that was not likely to lead to an arrest.

Ford opined that the Oriental Troop gang in Visalia had adopted some of the Crips gang traditions.  Like the Crips, Oriental Troop gang members adopted the color blue as their gang color.  The Norteños are rivals of the Oriental Troop gang.  Graffiti is a means for a gang to mark its territory or to disrespect another gang.

Ford was familiar with the See residence and with See, Aichang, and M.S.  Ford also testified to his previous law enforcement contact with M.S.  Ford had prepared a

report in preparation for his expert testimony in this case. Included in the report was M.S.'s birth date, which reflected that M.S. was 14 years old at the time of the incident.

The jury found See not guilty on count 2, guilty on counts 1 and 3, and found the gang enhancement true as to counts 1 and 3. As part of a bifurcated trial, the trial court found the prior strike and prior serious felony conviction allegations true. See was sentenced to a total term of 16 years four months in prison.

## DISCUSSION

See raises two issues. First, the trial court erred and deprived him of the right to present a defense when it permitted Aichang to invoke his Fifth Amendment right not to testify. Second, insufficient evidence established M.S.'s age. Therefore, the conviction for contributing to the delinquency of a minor must be reversed.

## I. Fifth Amendment Privilege

See contends he was deprived of the right to present a defense when Aichang invoked his Fifth Amendment right not to testify. This contention has no merit.

### *Factual Summary*

Outside the presence of the jury, the trial court noted that Aichang had pled no contest to the charges on January 5, 2012, and was granted felony probation. On April 9, 2013, Aichang was in custody without bail pending a hearing on a violation of felony probation.

During See's trial, the prosecution introduced evidence that Aichang had been convicted of possession of a firearm by a felon, vandalism, and contributing to the delinquency of a minor, each with a gang enhancement, in connection with the incident. The trial court took judicial notice of the convictions. The evidence was introduced in conjunction with Ford's testimony as a gang expert to support validation of Aichang as a gang member. The evidence was introduced without objection from See.

The defense indicated it intended to call Aichang as a witness because Aichang had given a statement to a defense investigator stating that See did not know of

4.

Aichang's and M.S.'s plans to tag that evening, Aichang had placed the gun in the vehicle, and See was too intoxicated to know what was going on at the time. If Aichang did not testify, the defense wanted to introduce the statement as a declaration against penal interest. The trial court refused to permit the statement to be introduced into evidence as a declaration against penal interest.

Aichang was then brought into the courtroom, without the jury present. Aichang's attorney stated he was advising Aichang to invoke his Fifth Amendment privilege not to testify. Aichang personally informed the trial court he was invoking the privilege. The People advised the trial court that Aichang was facing new charges that included gang allegations. The People declined to offer Aichang any immunity with respect to the new charges for any testimony offered in See's trial. See objected to allowing Aichang to invoke his Fifth Amendment privilege.

Ultimately, Aichang did not testify.

*Analysis*

See contends the trial court erred in allowing Aichang to invoke his Fifth Amendment privilege because having pled no contest and no appeal having been filed, Aichang no longer was subject to self-incrimination. We disagree.

A trial court determination of whether a witness is entitled to assert the Fifth Amendment privilege against self-incrimination is subject to independent review. (*People v. Seijas* (2005) 36 Cal.4th 291, 304.)

In *People v. Fonseca* (1995) 36 Cal.App.4th 631 (*Fonseca*), the witness had pled guilty and had been sentenced. When called to testify at a codefendant's trial, however, the witness invoked the Fifth Amendment. (*Fonseca,* at p. 633.) The defendant challenged the witness's right to invoke the Fifth Amendment privilege and the appellate court determined that a witness/defendant who pleads guilty or takes the stand to testify in his own case waives the privilege as to that proceeding. (*Fonseca,* at p. 637.) The

appellate court also held that "in neither case does [the witness/defendant] waive the privilege as to subsequent proceedings against other defendants." (*Ibid.*)

Here, Aichang was called to testify, not in his own proceeding but in a subsequent proceeding pending against See. As in *Fonseca,* Aichang's guilty plea did not constitute an automatic waiver of the Fifth Amendment privilege as to See's trial. (*Fonseca*, *supra*, 36 Cal.App.4th at p. 637.) The *Fonseca* court did not determine whether the privilege survives until the witness/defendant has served his sentence. (*Ibid.*)

See contends that Aichang's right to appeal from the judgment entered in connection with his plea had expired. Therefore, the Fifth Amendment privilege had expired. He is mistaken. The scope of a witness's Fifth Amendment privilege is to be "liberally construed." (*People v.* Williams (2008) 43 Cal.4th 584, 613 (*Williams*).) Aichang was facing charges for violating the felony probation that was imposed when he pled no contest to charges stemming from the incident involving See; Aichang had not fully served his felony probation sentence. Aichang was facing a possible revocation of probation, a new sentence on the underlying charges, and the right to appeal from that new sentence or violation of probation at the time he was called to testify. Consequently, the Fifth Amendment privilege had not been waived as to See's proceeding and it had not expired as to the proceeding against Aichang. (*Fonseca*, *supra*, 36 Cal.App.4th at p. 637.)

Moreover, a witness properly may assert the Fifth Amendment privilege whenever answering a question """"might be dangerous because injurious disclosure could result."""" (*Williams*, *supra*, 43 Cal.4th at p. 614.) Only when answering a question cannot possibly have a tendency to incriminate the witness is invocation of the Fifth Amendment privilege inappropriate. (*Williams,* at p. 614.)

Here, it cannot be said that Aichang could not have tended to incriminate himself by answering questions about the incident at the apartment complex. Under questioning

Aichang may have revealed information that could have affected the outcome of the probation violation pending against him.

Furthermore, the United States Supreme Court has narrowly construed any waiver of the Fifth Amendment privilege that may result from entering a plea. (*Mitchell v. United States* (1999) 526 U.S. 314, 322-323.) A defendant who enters a plea of guilty does not thereby waive his or her Fifth Amendment right for the purpose of his or her sentencing hearing. (*Mitchell,* at p. 322.) *Mitchell* dictates a narrow construction of any waiver of Fifth Amendment rights Aichang made by virtue of his no contest plea.

The *Williams* court also has narrowly construed any waiver of the Fifth Amendment privilege when a witness testifies at the preliminary hearing but later invokes the privilege when called to testify at trial. The California Supreme Court upheld the trial court's determination that the witness could invoke the privilege at trial, even after testifying at the preliminary hearing in the case. (*Williams*, *supra*, 43 Cal.4th at pp. 617-618.)

We conclude the trial court was correct in its determination that Aichang had the right to invoke his Fifth Amendment privilege and refuse to testify at See's trial. It does not follow, however, that See was deprived of a defense. Aichang was not a witness at See's trial and See was not deprived of the opportunity to cross-examine a witness. (*Williams*, *supra*, 43 Cal.4th at pp. 618-619.)

To the extent See is maintaining that Aichang should have been compelled to testify, the constitutional right to compulsory process in order to present a defense is not unfettered; it must be weighed against countervailing public interests. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 367 (*Bryant*).) In order to find a denial of due process based upon a denial of compulsory process, See must show that he was "deprived of the opportunity to present material and favorable evidence and that the deprivation was arbitrary or disproportionate to any legitimate purpose." (*Ibid.*) See has failed to establish either prong.

7.

First, as Aichang validly asserted his Fifth Amendment privilege, the trial court's refusal to order Aichang to testify was neither arbitrary nor disproportionate. A defendant's right to confront witnesses is not absolute and gives way when a witness properly asserts a Fifth Amendment privilege. (*Williams, supra,* 43 Cal.4th at p. 618.)

Second, Aichang was not the only witness who could have testified regarding the events surrounding the incident at the apartment complex; See himself could have testified. (*Bryant, supra*, 60 Cal.4th at p. 368.) Other testimony from the People's witnesses indicated See was intoxicated. The jury found See not guilty of the vandalism charge. See himself could have provided the "positive testimony" he sought from Aichang, namely, that he (See) was unaware of the presence of the firearm or his codefendant's criminal intentions in light of his (See's) intoxicated state.

The trial court's ruling allowing Aichang to invoke his Fifth Amendment privilege was not error and it did not deprive See of the ability to present a defense.

## II. Sufficiency of the Evidence

See also contends that the evidence was insufficient to support his conviction for contributing to the delinquency of a minor because there was insufficient evidence to establish that M.S. was a minor. We conclude the evidence was sufficient.

The dates of birth for See and Aichang were listed in the caption of the pleadings; a simple mathematical calculation established they were both adults. See and Aichang were jointly charged in count 3 with contributing to the delinquency of a minor, specifically M.S. Evidence of Aichang's conviction on the count 3 charge of contributing to the delinquency of a minor, M.S., was admitted without objection from See.

Although Aichang pled no contest to all the charges, including count 3, his plea of no contest has the same effect as a guilty plea in a criminal case. (§ 1016, subd. 3.) The plea constitutes an admission of every element of the offense—in this case the offense of contributing to the delinquency of a minor. (*People v. Palacios* (1997) 56 Cal.App.4th

8.

252, 257-258.) Since See, Aichang, and M.S. were the only three people involved in this incident, and neither See nor Aichang was a minor, the conviction constitutes evidence that M.S. was a minor.

In addition, Ford testified he was familiar with members of the See household and had made contact with M.S. at least once prior to the incident at the apartment complex. As part of his duties with the gang suppression unit, Ford had made contact with people in the Oriental Troop gang and had collected information on people connected to the gang and its members. This collection of information was not part of any arrest. Based upon the information Ford had obtained from field contacts with M.S. and other members of the See family, Ford testified that M.S. was 14 years old at the time of the graffiti incident. Ford's opinion was admissible. The documentation and out-of-court statements Ford relied upon as a basis for that opinion were not admitted for their truth but went to the weight to be afforded Ford's opinion. (*People v. Sisneros* (2009) 174 Cal.App.4th 142, 153-154.)

We conclude the conviction of codefendant Aichang, plus the testimony of Ford, constituted sufficient evidence that M.S. was a minor at the time of the graffiti incident at the apartment.

The People point out that the abstract of judgment incorrectly states that the term imposed for the count 3 offense was 16 years, although the abstract of judgment does correctly indicate that the total term imposed for all convictions was 16 years four months. The trial court's oral pronouncement of judgment on the count 3 offense was a term of 16 months in prison, to run consecutive to the term imposed on count 1.

When the abstract of judgment does not conform to the trial court's oral pronouncement, this court has the inherent authority to direct that the abstract of judgment be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

9.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment and disseminate the same to the appropriate authorities.